Filed 12/14/20  In re Marriage of Hanna CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| In re Marriage of MICHELE and PATRICK HANNA. | |
| MICHELE HANNA,  Appellant,  v.  PATRICK HANNA,  Respondent. | G058872  (Super. Ct. No. 07D002023)  O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Maurice Sanchez, Judge.  Affirmed.

John L. Dodd & Associates and John L. Dodd; Kayleen H. Writer, for Appellant.

The Law Offices of Patrick A. McCall and Patrick A. McCall for Respondent.

## INTRODUCTION

Michele Hanna (Michele) appeals from a judgment entered nunc pro tunc granting her petition for dissolution of her marriage to Patrick Hanna (Patrick), now deceased.[1] Owing to the failure of Michele's counsel to prepare and file a "formal judgment" after the family court granted a stipulated judgment of dissolution in 2008, the case languished in legal limbo until Patrick's death brought it again to light. After a hearing, the family court finally entered the "formal judgment."

We affirm the judgment. The family court had jurisdiction to enter the judgment, as the case had never been dismissed, and the facts of this case conform to the classic pattern for entering judgment nunc pro tunc: a case in which judgment had been rendered, but owing to some oversight the paperwork had not been completed. We cannot find that the trial court abused its discretion in entering the judgment, given the facts before it and the circumstances of the case.

## FACTS

Michele petitioned for dissolution on March 6, 2007, after a two-year marriage. There was a "trial" on December 13 and on December 19, 2007, (or perhaps the same trial on two days) and another "trial" on March 13, 2008. The register of actions includes multiple references to hearings on a request for order (RFO) re domestic violence and one regarding spousal support.[2]

On March 13, 2008, the court granted judgment of dissolution "pursuant to the handwritten stipulation signed and filed this date." The minute order further stated, "The marriage shall terminate upon the filing of a formal judgment" and ordered Michele's counsel to prepare the judgment.

---

[1] We use the parties' first names not out of disrespect but for ease of reference, since their names are the same.

[2] The register of actions in Michele's appendix does not include a description of the subject of the trials or designate the person who requested either order.

Moreover, the register in the appendix does not start with the filing of the petition (on March 6, 2007). The first entry in the register is "Hrg – RFO – domestic violence" dated March 27, 2007.

On March 12, 2012, the court issued an order to show cause (OSC) re dismissal for failure to prosecute, but ordered the matter off calendar at the hearing on April 6. The minute order stated, "The court finds that orders regarding spousal support were entered in this case pursuant to Minute Order dated 12/19/07."[3] Neither the parties nor their counsel appeared at this hearing.

Nothing else happened in this case for over seven years. On December 6, 2019, Marc Hanna – variously identified as Patrick's cousin or brother – applied ex parte for entry of an order of judgment of dissolution nunc pro tunc as of March 13, 2008. Attached to the application were declarations from Marc Hanna and from Patrick's divorce counsel, Patrick McCall. Marc Hanna declared that Patrick had died and Michele was refusing to release the body to his family for burial. Marc Hanna also declared that drug-using squatters were living in Patrick's house[4] and were selling his property, with Michele's permission. To McCall's declaration were attached the stipulated judgment disposing of the property, the minute order of March 13, 2008, granting dissolution pursuant to the stipulation, correspondence between the parties' attorneys regarding compliance with the terms of the judgment, and a page from the register of actions showing the withdrawal of Michele's counsel from the case in March 2009.[5] Michele's counsel's notice of withdrawal stated under penalty of perjury that judgment had been entered on March 13, 2008, and gave Michele's address as Lynwood Avenue in Santa Ana.

Michele's opposition to the ex parte application stated only that she was legally married to Patrick and that she wanted to seek the advice of an attorney.

---

[3] Presumably this minute order was entered following the second of the two "trials" referred to above.

[4] The stipulated judgment of March 2008 awarded a house on Barrett Lane in Santa Ana to Patrick as his sole and separate property.

[5] This page differs markedly in content and detail from the pages of the register of actions included in the appendix.

3

The ex parte application was denied pending a hearing, which took place on December 10, 2019.[6] After hearing from Michele, who represented herself, the court entered judgment nunc pro tunc for March 13, 2008, on the day of the hearing.

At the December 10 hearing, Michele claimed that the divorce case had been dismissed. She conceded, however, that she had signed the stipulated judgment. The court carefully explained to her that the purpose of the motion was to formally enter the judgment the parties had stipulated to in 2008 and that someone's counsel was supposed to prepare a formal judgment, but did not do so and then withdrew from the case. To which explanation, Michele responded, "Okay." When Michele later asked, "What is this all for – to release the body?" the court again explained to her that "the other side's motion is . . . to enter the judgment as you signed and agreed to back in March of 2008." Michele reiterated that the case had been dismissed and claimed she had "a minute order here also that – saying – the minute orders on here when I went to court, and it states that – it says they're all dismissed. All the minute orders are dismissed in this case."[7] Michele did not provide the court with any such minute order, and there are no minute orders dismissing the case in the register of actions in the appendix. The court determined that the formal judgment had not been entered because of "past error" and corrected the error by entering judgment nunc pro tunc as of March 13, 2008.

After the notice of appeal was filed on February 11, 2020, Michele petitioned for writ relief, mainly regarding her entitlement to reside at the Barrett Lane property and whether she had to post a bond. During the course of the writ proceedings, Todd Hanna substituted into the family law case as the personal

---

[6] The court set the hearing on shortened notice because the confusion regarding Michele's status as Patrick's wife was interfering with the release of his body to his family for burial.

[7] The court in 2019 evidently took Michele at her word, that the case had been dismissed, but explained that it had been done in error. In fact, the court never ruled on the OSC re dismissal issued in March 2012. It took the matter off calendar.

representative of Patrick's estate, by order of the probate court, and was permitted to substitute into the pending appeal as Patrick's personal representative, by order of this court. Michele has requested judicial notice of certain documents filed in the writ proceeding.

<b>DISCUSSION</b>

**I.        Judicial Notice**

Michele has asked us to take judicial notice of five exhibits from the writ proceeding commenced on March 23, 2020. These are Todd Hanna's petition for letters in Patrick's estate matter, three declarations, and Michele's reply brief. Michele repeatedly refers to these documents in her briefing.

We cannot take judicial notice of these documents for two reasons. First, they were not before the family court as part of the motion for judgment. Our review is limited to what was before the trial court when it exercised its discretion, and none of these documents – or the information in them – was given to the court at the time. California Rules of Court, rule 8.204(a)(2)(C) limits the appellant's statement of facts to matters in the record; it does not permit reference to subsequent documents the appellant hopes may become part of the record at some future time.

We are restricted to the record from the trial court because we have to evaluate the trial court's rulings based on what it had before it at the time. (See *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 29, fn.15); *National Secretarial Services, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521 [appeal limited to "face of the record"].) This is especially true when we are asked to evaluate the court's exercise of discretion.

Second, even if we could take judicial notice of the documents themselves, they would not assist Michele. Judicial notice of the existence of these documents and the fact that statements were made in them would not establish the truth of the statements, which are hearsay. We may judicially notice the truth only of orders, judgments, and

5

findings of fact and conclusions of law.  (See *Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22.)  None of these documents qualifies.

The request for judicial notice is denied.

**II.        Judgment Nunc Pro Tunc**

Whether the court has the jurisdiction to enter a judgment nunc pro tunc is a question we review independently.  (See *In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 485.)  Whether it exercised such jurisdiction correctly we review for abuse of discretion.  (*Scalice v. Performance Cleaning Systems* (1996) 50 Cal.App.4th 221, 239.)

Abuse of discretion is a deferential standard.  "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479; see also *San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 962-963 [discretion abused if decision is "irrational or arbitrary"].)

*In re Marriage of Mallory* (1997) 55 Cal.App.4th 1165 (*Mallory*) addresses the entry of a judgment of dissolution nunc pro tunc after one spouse has died.   In *Mallory*, the husband died after trial and the submission of the last of the written arguments, but before the court entered the minute order dissolving the marriage.  Counsel for both parties stipulated the court had no jurisdiction to enter the dissolution order.  (*Id*. at p. 1168.)

Six years later, the husband's executor sought to set aside the stipulation and have judgment of dissolution entered nunc pro tunc as of a date before the husband's death.  The court denied the request for a nunc pro tunc judgment, but entered an order dissolving the marriage as of six years *after* the husband's death.  The six-year post-death order was set aside, but the court also denied the executor's second motion for the nunc

6

pro tunc judgment of dissolution, and the executor appealed. (*Mallory, supra*, 55 Cal.App.4th at pp. 1168-1169.)

Relying on Code of Civil Procedure section 669[8] and the court's inherent power, the reviewing court held the trial court had the authority to issue a nunc pro tunc judgment to a date before the husband's death and sent the case back for a hearing on whether to enter such a judgment. (*Mallory, supra,* 55 Cal.App.4th at p. 1183.) "The policy behind [Code of Civil Procedure] section 669 was that if the parties had done everything they could to put the case in a posture where it was ready for final rendition of judgment, a court delay should not be used to prejudice the parties." (*Kellogg v. Asbestos Corp. Ltd*. (1996) 41 Cal.App.4th 1397, 1404-1405.) "A case is 'submitted' on the date when 'EITHER OF THE FOLLOWING FIRST OCCURS: (1) . . . the court orders the matter submitted; or (2) . . . the final paper is required to be filed or . . . argument is heard, whichever is later.' [Citations.]" (*Mallory, supra,* 55 Cal.App.4th at p. 1170.)

In this case, the matter was "submitted" when, after hearing the parties' testimony, the court granted judgment of dissolution pursuant to the stipulation on March 13, 2008. The court assigned the task of preparing a formal judgment to Michele's counsel, who neglected to do so, apparently under the impression that the ruling of March 13 completed the proceedings. The court itself failed to follow up, when, after issuing an OSC re dismissal in 2012, it neither dismissed the case nor reminded the parties that a formal judgment had not yet been filed, but instead referred cryptically to orders regarding spousal support.[9] "Where the delay is the result of some action or inaction on the part of the court itself, entry of a nunc pro tunc judgment in order to protect the

---

[8] Code of Civil Procedure section 669 provides, "If a party dies after trial and submission of the case to a judge sitting without a jury for decision or after a verdict upon any issue of fact, and before judgment, the court may nevertheless render judgment thereon." Implementation of this section implies that someone representing the deceased party must appear before the court to obtain the judgment. (See *In re Marriage of Shayman* (1973) 35 Cal.App.3d 648, 652-653 [deceased spouse's counsel appeared to request entry of judgment nunc pro tunc; "As the court in this case had rendered its decision prior to the death, we consider its jurisdiction to render formal judgment in no way impaired by the failure to effect a substitution."].)

[9] That was not the judge whose order we review today.

interests of one or all parties is mandated: ""'A court will always exercise [its inherent] authority when it is apparent that the delay in rendering the judgment, or a failure to enter it after its rendition, is the result of some act or delay of the court, and is not owing to any fault of the party making the application. . . .'"" [Citations.]" (*Mallory, supra*, 55 Cal.App.4th at p. 1179-1180; see also *Wells v. Coca Cola Bottling Co*. (1956) 140 Cal.App.2d 218, 220-222.)

Michele argues that the family court had no power to enter judgment nunc pro tunc because Patrick's death abated the divorce action before the judgment was entered. *Mallory* involved a point in the dissolution process even earlier than the one in this case: the husband died *before* the entry of a minute order. (*Mallory, supra,* 55 Cal.App.4th at p. 1168.) The reviewing court in *Mallory* held that the family court had the power to enter judgment, even before entry of a minute order, because the case had been "submitted." (*Id.* at p. 1183; see also *Frederick v. Superior Court* (2014) 223 Cal.App.4th 988, 992-993.) In this case, Patrick died long *after* a minute order granting dissolution was entered. The present case was further along than the case in *Mallory* when the spouse's death occurred.

Michele also argues that Patrick presented insufficient evidence of mistake, negligence or inadvertence as the cause of the failure to file a formal judgment. "[I]nadvertence and negligence may consist of a lack of heedfulness or attentiveness by refraining from doing the proper thing, and by failing to act when action is required." (*Kern v. Kern* (1968) 261 Cal.App.2d 325, 335.) It is undisputed that Michele's counsel failed to prepare and file a formal judgment in 2008, as the court had ordered. She "fail[ed] to act when action was required," regardless of her motives, and that failure is sufficient to qualify for nunc pro tunc entry of judgment. "The existence or nonexistence of 'mistake, negligence or inadvertence,' and if it does exist whether it was the cause of any delay in dating, signing, filing or entering an interlocutory judgment in a divorce action, are questions of fact to be determined by the trial court." (*Menge v. Brown* (1959)

8

173 Cal.App.2d 6, 19.)  In this case, the court determined that the failure to enter a formal judgment was done in error, and we must accept that determination.

Michele argues the court misled her as to the purpose of the December 10 proceeding.  She claims she thought the motion was simply to release Patrick's body to his relatives and the court gave her "inaccurate advice" about the consequences of the hearing.

This argument misrepresents the record.   While it is true that Michele kept insisting the divorce proceeding had been dismissed, the court was equally diligent in explaining to her what the motion was about – in layman's language.

When the court asked Michele for her position on the motion, she stated, "[T]here's no jurisdiction.  It was dismissed."  The court then explained the purpose of the motion:  "[Patrick's counsel] is asking that [the judgment] be entered nunc pro tunc which is Latin for 'now for then.' . . .  So he's asking that the court enter the judgment – essentially, the judgment that was already agreed to by the parties.  You've seen it. . . .  Is there any dispute as to whether you've signed it?  [Michele conceded that she signed it.]  All right.  And, apparently, one of the counsel at the time – I'm not sure [whose] counsel it was – was supposed to prepare a formal judgment, did not do so and then withdrew from the case. . . .  So it really appears to be a formality of simply entering the judgment."

The court and Patrick's counsel then discussed the wording of the judgment and the need for haste so that Patrick's body could be released to his family.  Michele asked, "And what is this all for – to release the body?"  The judge corrected her:  "What the other side's motion is is to enter the judgment as you signed and agreed back in March of 2008."  Michele once again protested that the case was dismissed, claiming to have a minute order to that effect.  The judge explained, "I think that was done in error. . . .  I think this is just correcting the past error."  The

9

judge clearly explained what the motion was about, and Michele's responses indicate she understood – and disagreed with – what was happening.

Michele now faults the trial judge for not asking her, "And why do you think you are still married to Patrick?" But at the hearing Michele gave a reason, twice: the divorce proceeding was dismissed. We cannot find the court abused its discretion by not asking her for *another* reason.[10]

Along the same lines, Michele complains that she received insufficient notice of the December 10 hearing. The ex parte application was filed on December 6, 2019, and the hearing took place on December 10.

The family court explained why the matter was being heard on shortened notice. Although Patrick had died on November 24, as of early December his family still could not obtain his body for burial because Michele was refusing to allow its release. At the December 10 hearing, Michele abandoned her refusal to release Patrick's body to the family. Had she done so earlier, a hearing on shortened notice would not have been necessary. Moreover, she appeared at the hearing and explained her position to the court. She had both adequate notice and an opportunity to be heard.

---

[10] In her opening brief in this court, Michele improperly relies on documents filed in connection with the writ petition for additional "facts." She asserted that she and Patrick had reconciled and that they had lived together for 11 years, until his death. Michele revealed none of this information to the court at the December 10 hearing. And it is not to be found in the record on appeal: the appendix and the reporter's transcript. (See *Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.)

10

**DISPOSITION**

The judgment is affirmed.  Appellant's request for judicial notice is denied. Respondent is to recover his costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

FYBEL, J.

THOMPSON, J.

11